**Form 240A - Reaffirmation Agreement (1/07)**

☐ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## District of UTAH SALT LAKE CITY

In re GREGG DANIEL BAIRD ,
    Debtor

Case No.  09-21980

Chapter  7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and
    Notice to Debtor (pages 1 - 5)

☐ Part D: Debtor's Statement in
    Support of Reaffirmation Agreement

☑ Part B: Reaffirmation Agreement

☐ Part E: Motion for Court Approval

☐ Part C: Certification by Debtor's Attorney

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. Note also: If you complete Part E, you must prepare and file Form 240B - Order on Reaffirmation Agreement.]*

**Name of Creditor:**  Wells Fargo Bank, N.A., Wells Fargo Auto Finance

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

    1.    **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

## SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

## AMOUNT REAFFIRMED

    The amount of debt you have agreed to reaffirm:    $2,650.57

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A - Reaffirmation Agreement (Cont.)**                                    2
**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.   If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)   The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

*And/Or*

(ii)   The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.   If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

b.   If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)   The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 07.50%.

--- And/Or ---

(ii)   The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: 7.50%.   If different simple interest rates apply to different balances included in the amount reaffirmed,

**Form 240A - Reaffirmation Agreement (Cont.)** 3

the amount of each balance and the rate applicable to it are: $
_____ @ _____ %;
$_____ @ _____ %;
$_____ @ _____ %.

    c.   If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d.   If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

<u>Item or Type of Item</u>                <u>Original Purchase Price or Original Amount of Loan</u>
04 OLDSMOBI ALERO                    $9,987.00
VIN: 1G3NL52FX4C119805

*<u>Optional</u>---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

~~Your first payment in the amount of _____ is due on _____, but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.~~

——*Or*——

~~Your payment schedule will be:_____ (number) payments in the amount of _____ each, payable monthly on the _____ (day) of each _____ (week, month, unless altered later by mutual agreement in writing.)~~

——*Or*——

Your payment schedule will be: __13__ payments in monthly installments of __$214.41__ commencing on __06/06/2009__ and continuing on the same day of each succeeding month.

**Form 240A - Reaffirmation Agreement (Cont.)**                                    **4**

## 2.  INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.**  The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully.  Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D.  If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

Form 240A - Reaffirmation Agreement (Cont.)                                    5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).


**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**Form 240A – Reaffirmation Agreement (Cont.)**                                      **6**

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
   Contract Type: Installment Contract; Contract Date: 11/17/2004; Account No.: 

   Original Credit Term: 61; Original APR: 07.50%; Original Monthly Payment: $214.41
   Original Amount Financed: $10,667.36

2. Description of any changes to the credit agreement made as part of this reaffirmation
   agreement:
   **This reaffirmation reduces: the balance from $2,678.67 to $2,650.57, the interest rate
   from 07.50% to 7.50%, and the monthly payment from $214.41 to $214.41 effective
   03/17/2009.**

SIGNATURE(S):

Borrower:

_Gregg Baird_
(Print Name)

_[signature]_
(Signature)

Date: _6-1-09_

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

_Wells Fargo Bank, N.A. Wells Fargo Auto Finance_
(Printed Name of Creditor)

_13675 Technology Drive, Bldg. C, 2nd Floor_
_Eden Prairie, MN 55344-2252_
(Address of Creditor)

_[signature]_
(Signature)

_JULIE J. JOHNSON, Bankruptcy_
_Specialist_
(Printed Name and Title of Individual
Signing for Creditor)

Date of creditor acceptance:
_6-9-09_

**Form 240A - Reaffirmation Agreement (Cont.)**                              7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

☐ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: _Robert [illegible] Robert Fugal_

Signature of Debtor's Attorney: _____ _Robert Fugal_

Date: _6/3/09_

**Form 240A - Reaffirmation Agreement (Cont.)**                    **8**

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, OR, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 and your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

     1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 2,000.00, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 1785 leaving $ 215 to make the required payments on this reaffirmed debt.

     I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

**(Use an additional page if needed for a full explanation.)**

     2. Provide the information requested below and then check one of the applicable paragraphs.

     Schedule I Total Income = 2203     Schedule J Total Expenses = 2633

     a, ____ There **IS NOT** a difference between the total income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above.

     b. X There **IS** a difference between the total income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above. The difference between the income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above is due to the following: I have separated from spouse and have different job

I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
     **(Debtor)**

     _____
     **(Joint Debtor, if any)**

Date: 6-1-09

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

     3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
     **(Debtor)**

     _____
     **(Joint Debtor, if any)**

Date: _____

**THIS IS A CONSUMER CREDIT SALE DOCUMENT**

## SIMPLE INTEREST MOTOR VEHICLE CONTRACT AND SECURITY AGREEMENT

| BUYER'S NAME | | DATE OF CONTRACT | Stock No. | 04173P |
| GENE BAIRD | | 11/17/2004 | | |

| BUYER'S RESIDENCE OR PLACE OF BUSINESS | | Source | JAMES R. PEHRSON |
| 2017 DOUBLE TREE CIR. IDAHO FALLS ID 83402 | ZIP CODE | AGREEMENT No. | Salesperson | |
| | | | Date | 11/17/2004 |

| CO-BUYER'S NAME AND ADDRESS | GREGG D. BAIRD | Bus. Phone | (208)525-2585 |
| 2017 DOUBLE TREE CIR. IDAHO FALLS ID 83402 | | Res. Phone | (208)524-5153 |

In this contract the words "we", "us" and "our" refer to the creditor (seller) named below or, upon any assignment, its assignee. The words "you" and "your" refer to the buyer and co-buyer if any named herein and to the heirs, executors, administrators and assigns of such buyer and co-buyer. We sell you the motor vehicle described below (the "vehicle") on credit. The credit price is shown below as the "Total Sale Price." The "Cash Price" is also shown below. By signing this contract you choose to buy the vehicle on credit and agree to pay the Amount Financed, along with a Finance Charge at the Annual Percentage Rate shown below on the unpaid principal balance of the Amount Financed, according to the schedules, terms and agreements shown on the front and back of this contract. If this contract is signed by a buyer and co-buyer, each is individually and together responsible for all agreements in the contract.

**SEE OTHER SIDE FOR ADDITIONAL TERMS AND AGREEMENTS.**

| NEW/USED | YEAR | MAKE | CYL. | DIESEL | GAS | OTHER | BODY STYLE | | ODOMETER READING | VEHICLE IDENTIFICATION NUMBER |
| USED | 2004 | OLDSMOBILE | 4 | | XX | | 4 DOO | ALERO | 27313 | 1G3NL52FX4C119805 |

| COLOR | WHITE | TRIM | GL | TRANS | STK. | YEARS | KEY NO. | R.O.S. NO. |

### DISCLOSURES PURSUANT TO THE TRUTH-IN-LENDING ACT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 |
| 7.50 % | $ 2197.24 (e) | $ 10667.36 | $ 12864.60 (e) | $ 12864.60 (e) |

| YOUR PAYMENT SCHEDULE WILL BE: | Number of Payments: | Amount of Payments: | When Payments Are Due: |
| One Payment of | | N/A | |
| One Payment of | | N/A | |
| 60 | Payments of | 214.41 | Monthly, beginning 01/01/2005 |
| One Final Payment of | | N/A | |

**SECURITY:** You are giving a security interest in the goods or property being purchased.
**LATE CHARGES:** If any payment is more than 10 days late you will be charged the greater of $15 or 5% of the late amount.     **(e) means an estimate**
**PREPAYMENT:** You may pay your contract in full at any time without penalty.
See the remainder of this document for any additional information about nonpayment, default and any required prepayment in full before the scheduled date.

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulations may require a special buyers guide to be displayed on the window.

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo arriba, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.

**LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.**

### STATEMENT OF INSURANCE

*NOTICE: No person is required as a condition of financing the purchase of a motor vehicle to purchase, or negotiate, any insurance through a particular insurance company, agent or broker.* You have requested Seller to include in the balance due under this contract the following insurance. Insurance is to expire WITH ☐ BEFORE ☐ AFTER ☐ the due date of the final installment. Buyer requests Seller to procure insurance on the vehicle against fire, theft, and collision for the term of this contract. Any insurance will not be in force until accepted by the insurance carrier.

| | | | Premium |
| $ N/A | DED., COMP., FIRE & THEFT | Mos. $ | N/A |
| | DEDUCTIBLE COLLISION | Mos. $ | N/A |
| BODILY INJURY $ | LIMITS | Mos. $ | N/A |
| PROPERTY DAMAGE $ N/A | LIMITS | Mos. $ | N/A |
| MEDICAL | | Mos. $ | N/A |
| | TOTAL VEHICLE INSURANCE PREMIUMS $ | | (a) |

Name of Insurer
The foregoing declarations are hereby acknowledged.

| DATE | X SELLER | X BUYER |

### CREDIT INSURANCE AUTHORIZATION AND APPLICATION
You voluntarily request the credit insurance checked below, if any, and understand that such insurance is not required. Your acknowledge disclosure of the cost of such insurance and authorize it to be included in the balance payable under this contract. Any returned or refunded credit insurance premiums shall be applied to sums due under this contract. Only the persons whose names are signed below are insured.

| CREDIT LIFE | Mos. Premium $ | N/A |
| JOINT LIFE | Mos. Premium $ | N/A |
| CREDIT DISABILITY | Mos. Premium $ | N/A |
| JOINT CREDIT DISABILITY | Mos. Premium $ | N/A |
| | TOTAL CREDIT INSURANCE PREMIUMS $ | (b) |

Name of Insurer    N/A

☐ You want Credit Life Insurance    ☒ You do not want Credit Life Insurance
☐ You want Credit Disability Insurance
☐ You want Joint Credit Life Insurance
☐ You want Joint Credit Disability Insurance
☒ You do not want Credit Disability Insurance

If the boxes above are checked to indicate that you desire Credit Life or Credit Disability Insurance, or both, your signature below means that you agree that you elect the insurance shown above subject to the eligibility requirements, conditions and exclusions set forth in your insurance policy(ies) or certificate(s). If the boxes above are checked to indicate that you do not want Credit Life or Credit Disability Insurance, or both, your signature below acknowledges that fact.

| 11/17/2004 | X Gene C. Baird | 54 |
| DATE | PRIMARY BUYER | AGE |
| 11/17/2004 | X Gregg Baird | 23 |
| DATE | CO-BUYER | AGE |

### ITEMIZATION OF AMOUNT FINANCED
| A. Cash Price Motor Vehicle and Accessories | $ | 9987.00 | (A) |
| 1. Cash Price Vehicle | $ 9987.00 | | |
| 2. Cash Price Accessories | $ N/A | | |
| B. Sales Tax | $ | 603.36 | |
| C. Luxury Tax | $ | N/A | |
| D. Service Contract (optional)** | $ | N/A | |
| * See Service Contract Box below | | | |
| E. Document Preparation Charge | $ | 69.00 | |
| (not a governmental fee) | | | |
| F. Other | $ | N/A | |
| G. Other | $ | N/A | |
| To whom paid | | | |
| TOTAL CASH PRICE (1A to G) | | 10659.36 | |
| A. Trade-In (Description) | | N/A | (A) |
| Year____ Make _____ | $ | N/A | |
| Model | | | |
| V.I.N. | | | |
| Odometer | | N/A | |
| B. Less Prior Credit or Lease Payoff | $ | N/A | (B) |
| C. NET TRADE-IN (A minus B) | | N/A | (C) |
| D. Cash Downpayment | $ | N/A | (D) |
| E. Manufacturer's Rebate | $ | N/A | (E) |
| TOTAL DOWNPAYMENT (2C + D + E) | | N/A | (2) |
| (if negative, enter "0" and see 6C below) | | | |
| 3. NET CASH PRICE (1 minus 2) | | 10659.36 | (3) |
| 4. AMOUNTS PAID TO PUBLIC OFFICIALS | | | |
| A. Title Fee | $ | 8.00 | |
| B. License/Title Fee | $ | N/A | |
| C. Other | $ | N/A | |
| D. Other | $ | N/A | |
| E. Other | $ | N/A | |
| F. Other | $ | N/A | |
| G. Other | $ | N/A | |
| H. Other | $ | N/A | |
| TOTAL OFFICIAL FEES (4A to H) | | 8.00 | (4) |
| 5. OTHER AMOUNTS FINANCED** | | | |
| A. Total premiums paid to insurance companies | | N/A | |
| per Statement of Insurance (a + b) | $ | | |
| B. Other | $ | N/A | |
| To whom paid | | | |
| C. Prior Credit or Lease Balance | $ | N/A | |
| To whom paid | | | |
| D. Other | $ | N/A | |
| To whom paid | | N/A | |
| TOTAL OTHER AMOUNTS FINANCED (5A to D) | | N/A | (5) |
| 6. SUBTOTAL (3 + 4 + 5) | | 10667.36 | (6) |
| 7. FEES NOT FINANCED | | N/A | (7) |
| To whom paid | | | |
| ** We may retain, or receive as a rebate, a portion of this amount. | | | |

**VEHICLE USE:** The primary use of the vehicle will be
☒ Personal, Family or Household    ☐ Commercial    ☐ Agricultural

**\*SERVICE CONTRACT** (Optional) You request a service contract written for the following company for the term below. The cost is shown in item 1(D) above.

| Company | | Term |
| Buyer X | Months |
| | Co-Buyer X |

Guaranty. For value received, and in further consideration of the credit sale to Buyer (and Co-Buyer, if any) of the vehicle, upon your request each Guarantor hereby: unconditionally guarantees full performance of this contract in all its terms and the prompt and full payment of all sums due under the contract together with expenses, costs and fees; agrees to pay attorneys' fees and costs of enforcing the contract; agrees that in the event of the non-compliance with any of the provisions of the contract, whether or not repossession has been made or undertaken, suit may be brought against any one or more of the Guarantors, without waiving any right later to repossess; waives any and all demand or notice of non-payment, demand, presentment or protest; and agrees; that extension or change of terms shall not in any way release Guarantor(s).

| Guarantor's Signature | Date | Address |
| Guarantor's Signature | Date | Address |

**OPTION:** ☐ You pay no Finance Charge if the Amount Financed, item 6, is paid in full on or before _____ Year _____ . SELLERS INITIALS ____

### THERE IS NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or other cancellation period for this sale. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

Buyer and Co-Buyer acknowledge that (1) before signing this contract Buyer and Co-Buyer have read both sides of this contract and received a legible, completely filled-in copy of this contract; and (2) Buyer and Co-Buyer have received a copy of every other document that Buyer and Co-Buyer signed during the contract negotiation.

| Buyer's Signature | Gregg Baird | Seller | RICK'S MITSUBISHI |
| Co-Buyer's Signature | | Seller's Address | 4401 YELLOWSTONE POCATELLO ID 83201 |
| | | By X | |

NOV 2004

LAW ✦ FORM NO. 553-ID REV. ©2004 by LAW 800-323-2028 800-331-9085
THE MAKER, SELLER AND WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

## ADDITIONAL TERMS AND AGREEMENTS

**A. PROMISE TO PAY:** You promise to pay the downpayment and Amount Financed, plus interest on the unpaid balances on the Amount Financed as shown in the Payment Schedule, even if the vehicle is damaged, destroyed or missing.

**B. SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule shown may differ from the amount you will ultimately have to pay if your payments are not received on their exact due dates or the Seller adds amounts to the amount you owe for any of the reasons stated below. For example, early payments would reduce your final payment, while late payments and additions to the amount you owe would increase it. Your final payment may be different from the amount shown for at our option, we may require you to make additional payments until all amounts you owe are paid in full if the Seller figured the Payment Schedule assuming equal monthly payment periods and other factors permitted under the Truth in Lending Act. Your promise to pay requires you to pay the final payment on the date due even if it is different from the amount shown for any of these reasons.

**C. SECURITY INTEREST.** You hereby grant us a security interest under the Uniform Commercial Code in the vehicle and all parts and accessories put on the vehicle and in all insurance premiums financed for you or rebates from insurance premiums, service contracts, and in the proceeds of any insurance policies covering the vehicle or credit or disability insurance policies financed hereunder, which security interest secures all sums which may become due under this contract, as well as any modifications, extensions, renewals, amendments, or re-financing of it.

**D. USE OF VEHICLE:** You agree to keep the vehicle free of all taxes and liens, except in favor of Seller, and not to use the vehicle--or permit the vehicle to be used--illegally, improperly, or for hire, or to expose the vehicle to misuse, seizure, or confiscation, or other involuntary transfer, even if the vehicle was not the subject of judicial or administrative action. You agree not to make any material change in the vehicle or allow any material change in it to be made, or to remove the vehicle, or allow it to be removed from this State for a period in excess of 30 days or transfer any interest in the vehicle. You agree to keep the vehicle in good working condition and make all necessary repairs. You agree not to remove the vehicle nor to permit its removal, from this country. Although we are not obligated to do so, if we elect to pay any taxes, fees or liens in connection with the vehicle, or to expend any other amount to protect our interests in the vehicle, you agree to repay us on demand, upon our option: (i) upon our demand upon you to do so or (ii) we may add the dollar amount of any such liens, taxes, or other charges we pay to the balance of this contract, accruing Finance Charge, from the time we pay such amounts until the time you then to us, at the Annual Percentage Rate shown on the face of this contract, with such dollar amount and Finance Charge due at maturity of this contract or, at our option, in monthly installments over the remaining payment dates shown on the face of this contract.

**E. INSURANCE:** You agree to keep the vehicle insured in our favor with a policy satisfactory to us and with an insurer authorized to do business in the jurisdiction in which the vehicle is registered, with comprehensive fire, theft and collision coverage, insuring the vehicle in an amount sufficient to cover the value of the vehicle. You agree to deliver the policies to us, and you agree that we may (i) contact your insurance agent to verify coverage or to add us as a loss payee on your policy. (ii) make any claim under your insurance policy. (iii) cancel any insurance financed under this contract on your default, and (iv) receive any payment of loss or returned premium, and apply the amount received, at our option, to repair or replace the vehicle or to your indebtedness under this contract, including indebtedness not yet due. If you fail to maintain such insurance, we may, at our option, procure insurance to protect our interest in the vehicle, and you agree to pay for any insurance we procure Finance Charges on the premiums at the Annual Percentage Rate shown on the face, for the remaining term of the contract or any shorter period as we determine. Such insurance may not cover you for personal injury, property damage, public liability, uninsured motorist, no-fault, or any other types of insurance you are required by law to maintain. You understand that the insurance premiums may be higher if we must purchase insurance than if you had purchased the insurance yourself. If insurance has been purchased in connection with this contract, any difference between the amounts shown in the Statement of Insurance for premiums which may arise from errors in computation, classification, grouping or zoning, or changes in the type of insurance shall be payable by you on demand. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged, or destroyed.

**F. PREPAYMENT OF AMOUNT OWED:** You may prepay all amounts due under this contract at any time.

**G. DEFAULT:** If you breach any warranty or default in the performance of any promise you make in this contract or any other contract you have with us, including, but not limited to, making of any payment when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise, or if the vehicle is damaged, destroyed, or impounded, we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable subject to any right of reinstatement as required by law (2) file suit against you for all unpaid sums (3) take immediate possession of the vehicle (4) cancel any insurance and credit on the vehicle. Upon repossessing the vehicle and any accessories as provided by law, if you do not redeem the vehicle, we will sell it, together with any accessories, equipment or parts installed therein, at public or private sale. We may purchase the vehicle at any public sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the vehicle. The balance will be applied to unpaid sums owing under this contract, including collection costs and attorney fees. If there is any money left over (surplus) it will be paid to you or to another person if required by applicable law. If a balance still remains owing, you promise to pay the same (deficiency) to us on demand. If you default, you agree to pay Finance Charges on the Annual Percentage Rate shown on the reverse side or, if higher, the highest interest rate permitted by law, until all sums owing us are paid in full or judgment is entered. Our remedies are cumulative and not alternative. If we repossess or retake the vehicle or enforce a judgment against you and sell the vehicle, you agree that we shall be entitled to recover from you our reasonable collection costs, including, but not limited to, attorney's fee. In addition, if we repossess the vehicle, you grant to us and our agents permission to enter upon any premises where the vehicle is located, and repossession will be performed peacefully. You agree we are not liable to you for any claims for damages and expenses arising out of the repossession, including, but not limited to, any sums we pay third party agents. With respect to any sums we are entitled to recover pursuant to the previous four sentences, you will reimburse us, at our option: (i) upon our demand upon you to do so or (ii) we may add the dollar amount of any such sums, costs and expenses to the balance of this contract, accruing Finance Charge, from the time we pay such amounts until the time you pay them to us, at the Annual Percentage Rate shown on the face of this contract.

**H. WARRANTIES OF BUYER:** You promise that you have given true and correct information in your application for credit, you have no knowledge that will render that information untrue in the future, and you understand that we have relied upon the information in your application for credit to enter into this contract; that upon request you will provide us with documents and other information necessary to verify any item of information contained in your application; that you have given us a true payoff amount on any vehicle traded in and that it is not current and is greater than the amount shown in this contract, you will pay the excess to us on demand; and that any such trade-in described on the reverse side of this contract is free from all claims of others, except as previously disclosed to us.

**I. POWER OF ATTORNEY:** You hereby appoint us, as well as any of our appropriate officers or other employees, as your attorney-in-fact, with full power of substitution, to sign in your name, place and stead any and all Certificates of Ownership, Registration Cards, applications, affidavits and/or any other documents required or necessary to transfer or convey any and all right, title and interest in and to the vehicle, such powers to be exercised only in the event of your default and only with respect to such documents as are necessary or incident to the execution of the powers hereby grant us, including without limitation endorsing insurance proceeds checks on your behalf, as fully and to all intents and purposes as you might or could do if personally present. The power of a power of attorney is coupled with an interest. It is revocable as long as your obligations under this contract are fully satisfied or until judgment is entered.

**J. OTHER AGREEMENTS OF BUYER:** (1) In the event this contract is assigned to an Assignee, you agree that your Assignee will not be subject to any claim, defense, or setoff that you may have against Seller. If they are less, we will refund the excess to you. (2) You agree that if we accept payments in sums less than those due or payments marked "payment in full" or similar statements of the contract, doing so will not act as a waiver of our right to enforce the contract as written. (3) To the extent permitted by law, we may charge you a $20 fee for the return by a depository institution of a dishonored check, negotiable order of withdrawal or share draft issued in connection with any payment due under this contract. (4) If the vehicle is repossessed we may store personal property found in the vehicle for you account and at your expense, as permitted by law, and if you do not claim the property within 10 days after repossession, we may dispose of the personal property in any manner we deem appropriate unless liability is to you. (5) If your payment is more than 10 days late you may be charged the greater of $15 or 5% of the late amount. (6) You will allow us to inspect the vehicle at any reasonable time and notify us of any change of your address immediately. (7) You acknowledge that we may assign this contract and you agree that the assignee will have all our rights and remedies under this contract and also agree to pay all that is still owed under this contract at the times and as the invoices may require. To the assignee. (8) Upon payment of this contract in full we may release to you any security interest in any property covered by this contract, and we may at our option retain a security interest, as appropriate, and send it to any of you. (9) Any provision of this contract which may be held void or invalid shall not mean that this contract is unenforceable and the remaining interest, as appropriate, and be binding. (10) You hereby waive, to the extent permitted by law, all rights under the appropriate homestead and exemption laws of you jurisdiction, and you agree that if we enforce our rights under this contract, all property you own may be applied to what you owe. (11) This contract is to be governed by the law of the jurisdiction in which the seller is located, as set forth on the reverse of this contract and, if the vehicle is repossessed hereunder, the laws of the jurisdiction in which the repossession occurs may govern such repossession. (12) All of the agreements between us and you are set forth in this contract and no modification of this contract shall be valid unless it is made in writing and signed by you and us. (13) We may obtain a consumer credit report from one or more consumer credit reporting agencies (as the term is defined in the federal fair credit reporting agencies) in connection with your application and any extension of credit. You agree that we may (i) obtain such reports in connection with any renewal, refinancing, modification or extension of the contract and any difficulty or may obtain one or more consumer reports on you. You agree that we may (ii) verify your employment, pay, assets and debts and that you will cooperate with our efforts to do so. (14) A copy of this contract is sufficient to provide us with such information. You agree that we, our assignees and any of our affiliates and others may exchange credit, account and other financial information (including information as to credit record) about you. You agree that this includes, but is not limited to, the sharing of information for the purposes of providing customer service, considering your eligibility for any product or service offered by us or others, and entering your obligations to us or an affiliate.

**K. DELAY IN ENFORCEMENT:** We can delay or waive enforcement of any of our rights under this contract without losing them.

**L. SELLER'S WARRANTIES:** We disclaim any warranty or representation as to the accuracy of the mileage on the odometer. We do not warrant the correctness of the year of manufacture or model of the vehicle. You agree that you have verified the description of the vehicle to your satisfaction and there is no warranty as to the physical condition of the description of the vehicle. **UNLESS THE SELLER OF THE VEHICLE MAKES A WRITTEN WARRANTY COVERING THE VEHICLE OR, WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, EXTENDS A SERVICE CONTRACT COVERING THE VEHICLE, THE SELLER MAKES NO EXPRESS WARRANTIES AND NO IMPLIED WARRANTIES WITH RESPECT TO THE MERCHANTABILITY, SUITABILITY, FITNESS FOR PURPOSE, OR OTHERWISE CONCERNING THE VEHICLE, PARTS OR ACCESSORIES DESCRIBED THEREIN.**

**M. NOTICES:** Any notice sent to you will be sufficient if mailed to your last known address, which is presumed to be your address as set forth in this contract unless you have given us written notice of a change of your address.

**N. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The notice above does not apply if the box for Commercial or Agricultural use is checked on the reverse of this contract.

**O. NOTICE PURSUANT TO IDAHO CODE §42-2806 REGARDING MOTOR VEHICLE SERVICE CONTRACTS. THE PURCHASE OF A MOTOR VEHICLE SERVICE CONTRACT IS NOT REQUIRED EITHER TO PURCHASE OR TO OBTAIN FINANCING FOR A MOTOR VEHICLE.**

## ASSIGNMENT WITH RECOURSE

For value received, the Seller ("Seller") named on the other side of this Simple Interest Motor Vehicle Contract and Security Agreement ("Contract") does hereby sell, assign and transfer to: _____ and its successors and assigns ("Assignee") all of Seller's right, title and interest to the Contract, the property described in the Contract ("Property"), and all moneys due and to become due under the Contract. Seller (jointly and severally if more than one) hereby further agrees as follows: Seller guarantees full performance of the Contract in all its terms and the prompt payment when due of any and all amounts due under the Contract. Seller waives the collection expense, costs and attorney's fees, and agrees to pay any attorney's fees and costs incurred in enforcing this Assignment With Recourse. Seller has not assigned the Payment in the Contract ("Buyer") in obtaining a loan from any third party to be used as all or a part of any downpayment and has actually received in good faith in full the Buyer and the Seller, that at the Contract. Seller represents and warrants that all requirements of federal and state laws applicable to the Contract, including, without limitation, the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act, state and federal laws regulating consumer credit and disclosures in connection with transactions financing motor vehicles and all regulations promulgated under such laws, have been complied with. Seller agrees to indemnify Assignee against any claim Assignee harmless from all claims, actions, suits, proceedings, costs, expenses, legal, and damages, and liabilities, including attorney's fees, arising out of, relating to, or connected with or resulting from any condition, whether well founded, baseless, or otherwise, that Buyer has been a violation of, or failure to comply with, any such laws in connection with the Contract. Seller agrees that in the event Buyer breaches the Contract, violates any of the Property has been repossessed, or an attempt has been made to do so, but may be bought by Assignee against Seller, and/or, or not suit has been commenced against Buyer, for violation of any rights as to Buyer's obligation agrees that the event of default by Buyer or repossession of the Property. Seller will pay Assignee upon demand the entire balance due against the Contract, and without limiting any remedy as provided in this contract and no modification of this Assignment With Recourse and all other rights that can be waived in any assignment such as this. Seller waives to us presentment or protest, demand, presentment or notice of any kind, including attorney's fees, in any way arising out of the Contract or the making of any assignment of the Contract. Seller demand, presentment or protest which may be required under this Assignment With Recourse or in connection herewith, and agrees that any extensions or impairments of remedies which may be granted by Assignee to Buyer shall not in any manner release Seller. In the event that suit is instituted to enforce any of the terms of this Assignment With Recourse, Seller waives the right to change the place of trial from the court originally acquiring jurisdiction. Seller warrants that application has been made for vehicle registration showing Assignee as first lienholder on the title to the Property.

Dated _____ at _____
                 (Dealer's City and State)

Signed _____ (Seal)    By _____
      (Name of Dealer)               (Officer, Firm Member or Owner)

## ASSIGNMENT WITHOUT RECOURSE

For value received, the Seller ("Seller") named on the other side of this Simple Interest Motor Vehicle Contract and Security Agreement ("Contract") does hereby sell, assign and transfer WITHOUT RECOURSE to: _____ and its successors and assigns ("Assignee") all of Seller's right, title and interest to the Contract, the property described in the Contract ("Property"), and all moneys due and to become due under the Contract. Seller (jointly and severally if more than one) hereby further agrees as follows: Recourse, any separate dealer agreement with the Assignee, and any reserve or agreement. Seller (jointly and severally if more than one) hereby further agrees as follows: Seller has not assisted the Buyer named in the Contract ("Buyer") in obtaining a loan from any third party to be used as all or a part of any downpayment and has actually received in good faith in full the downpayment, if any, in the Contract. Seller represents and warrants that all requirements of federal and state laws applicable to the Contract, including, without limitation, the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act, state and federal laws regulating consumer credit and disclosures in connection with transactions financing motor vehicles and all regulations promulgated under such laws, have been complied with. Seller represents and warrants that at the time of the Buyer; that there are no discrepancies, counterclaims, or setoffs on the part of Buyer against the amounts payable; that there have been no representations or warranties made to Buyer not contained in the Contract; that all information given concerning Buyer is true and correct; that the Buyer's signature to the Contract is genuine; and that Seller has no information of reason to suspect that any provision of the Contract will be violated and that Buyer had a good financial and legal risk. The Contract, and the transaction it evidences, and all disclosures to Buyer and other matters in connection with the Contract, are in compliance with all applicable federal and state laws, including the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act, made, executed and disclosed in compliance with, all applicable federal and state laws, including the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act and all disclosures required by law. Seller warrants that this Assignment Without Recourse and all other rights are valid and that Seller hereby agrees to indemnify Assignee and hold Assignee harmless from all claims, actions, suits, proceedings, costs, expenses, loss, damages, and liabilities, including attorney's fees, arising out of, relating to, or connected with, relating to or resulting from any condition, whether well founded, baseless, or otherwise, that there has been a violation of refusal to comply with any such laws in connection with the Contract. Should any of Seller's representations or warranties be false, Seller agrees to pay Assignee or holder upon demand the full amount then owing under the Contract, but such obligation of the Property shall not be deemed an obligation of the Property that has not included against the Buyer. Seller, or both. Seller agrees that its sole obligation is as a result of the breach of any of the representations or warranties contained in this assignment. Seller agrees to pay reasonable attorney's fees and court costs incurred by Assignee in such action. Seller consents to extensions of payment or alterations of the Contract or assignment of remedies which may be granted by the Assignee, and waives any and all notice of nonpayment, demand, presentment or protest, which otherwise might be required under this assignment or in connection therewith. Seller hereby waives all statutes of limitations and the defense thereof and all other rights that can be waived in an assignment such as this. In the event that suit is instituted to enforce any of the terms of this Assignment Without Recourse, Seller waives the right to change the place of trial from the court originally acquiring jurisdiction. Seller warrants that application has been made for vehicle registration showing Assignee as first lienholder on the title to the Property.

Any of the following that are checked also apply:

☐ **Full Guaranty.** Seller unconditionally guarantees the full and punctual payment of the full amount remaining unpaid under the Contract and agrees to repurchase the Contract from the Assignee or other holder, upon demand, for the full amount then unpaid, whether the Contract is then in default or not.

☐ **Limited Guaranty.** Seller guarantees payment of the full amount remaining unpaid under the Contract and covenants that if default be made in the payment of any instalment due under the Contract, to pay the full amount then unpaid to the Assignee or holder, upon redelivery to the Seller of the vehicle.

☐ **Limited Guarantee.** Seller guarantees, in the event of a default under the Contract, the payment of the total amount due under the Contract, and should the net proceeds of the sale of the vehicle be insufficient to pay in full the amount remaining unpaid under the Contract, Seller will, upon demand, pay to the Assignee or other holder the amount of its loss under the Contract.

☐ **Partial Recourse.** Seller guarantees the due and punctual payment of the first _____ installments due under the Contract ("the Guaranteed Installments") and agrees to repurchase the Contract from the Assignee or other holder, upon demand if default be made in the payment of any of the Guaranteed Installments, for the then unpaid, but should the Guaranteed Installments be paid punctually and in accordance with the terms of the Contract, the Seller's guaranty and purchase cease and as to any installments due thereafter shall have no effect at any time.

Dated _____ at _____
                 (Dealer's City and State)

Signed _____ (Seal)    By _____
      (Name of Dealer)               (Officer, Firm Member or Owner)

FORM NO. 553-ID BACK (REV. 1/03)

Edit Loan

**File** | **View** | **Find** | **Reports** | **Setup** | **Process** | **Close**

Quick Find: | Title | ▼ | Account ID | ▼ | | Find

Print As PDF | ▼ | Save Loan | ▼ | Refresh Loan | ▼ | Delete Loan | ▼

## Basic Lien Information

**Account ID** [_____]

**Lien Start** 11/17/2004

**VIN** 1G3NL52FX4C119805

**Orig. Loan $** 10667.36

**Customer** GENE BAIRD

**Dealer ID** 04113

Color legend:
Required data
Requested Data
Data in Error

**Lien Holder:** Wells Fargo Auto Finance Inc

### Last Transactions

**Sent** NONE

**Received** 12/01/2004 22:33 Add Title - Perfection of Lien

**Status Code** [ Filed ▼ ]

Status NONE

## Borrower/Lessee

○ Single  ● Combined  ○ Business

**Name** GENE BAIRD

**CoSigner** GREGG D BAIRD

**Address** 2017 DOUBLE TREE CIR

**Address 2**

**City** IDAHO FALLS  **State** ID  **Zip** 83402

## Collateral Information

**Make** OLDSMOBILE    **Model** ALERO

**Year** 2004    **Mileage** 27313

**Type** [ <-Select-> ▼ ]

### Title Information

**Received** 12/1/2004

**Status** MATCHED 12/1/2004    Remove Match

**Tag No**

**No ID** 045020577

☐ **Title In-File Pre-Conversion**

1 (68) ID: Actual Odometer
2 (00) ID: Clear

## Loan Information

**Loan Start** 11/17/2004    **Loan End** 12/1/2009

**Loan Balance $** 0    **Orig. Loan $** 10667.36    **Mileage** 0

**Loan Type** Retail    ▼

☑ ELT Lien

Save Loan | ▼ | Refresh Loan | ▼ | Delete Loan | ▼

Notes

Record Updated: Add Successful    Add Note

### Customer Notes (View Notes Report)

| Date/Time | User | Notes |
|---|---|---|
| 11/19/2004 08:35 | IMPORT | : |